IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EUNICE MAE VERONICA CHIWEWE, as Personal
Representative in the Estate of ROXANNE CRYSTAL
JIRON, a deceased minor, EUNICE MAE VERONICA
CHIWEWE, as Personal Representative in the Estate of
IVAN B. CHIWEWE, deceased, EUNICE MAE VERONICA
CHIWEWE, individually, JUAN CRESCENCIO JIRON,
ELI CHIWEWE, and CALVIN R. LUCERO,

    Plaintiffs,

vs.                                                                                                       Civ. No. 02-0397 JP/LFG-ACE

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,
AMTRAK, ROBERT H. WILBUR, DAVID
SCHUTE, A. NABE, WYMAN L. SCHENK,
JOHN DOE 1, and JOHN DOE 2,

    Defendants.

## MEMORANDUM OPINION AND ORDER

The Plaintiffs filed this lawsuit in state court on March 8, 2002 and the Defendants removed it to federal court on April 8, 2002. The Plaintiffs also filed a parallel lawsuit in Isleta Tribal Court on March 8, 2002. On June 11, 2002, the Defendants filed an Application for Temporary Restraining Order and Preliminary Injunction (Doc. No. 8) to enjoin the Plaintiffs from taking any further action against the Defendants in Isleta Tribal Court. Contrary to what its title indicates, the Application for Temporary Restraining Order and Preliminary Injunction is only an application for a preliminary injunction. *See* Errata to Application for Preliminary Injunction (Doc. No. 10), filed June 11, 2002. The application for preliminary injunction is based on Defendants' argument that the tribal court lacks jurisdiction to hear this case. The tribal court has set a hearing on August 20, 2002 to address the issue of tribal court jurisdiction. Having reviewed

the briefs and relevant law with respect to the application for preliminary injunction, I find that a preliminary injunction should issue. I also find that it is appropriate to enter an order to show cause why the preliminary injunction should not be made permanent. Finally, I find that a hearing on the motion for preliminary injunction is unnecessary because there are no disputed material facts with respect to the jurisdictional issue. *See Kerr-McGee Corp. v. Farley*, 88 F.Supp.2d 1219, 1233 (D.N.M. 2000).

A. Background

This lawsuit arises from the death of Roxanne Crystal Jiron. On March 14, 1999, an Amtrak train hit and killed Ms. Jiron while she was on a railroad bridge owned by Defendant Burlington Northern and Santa Fe Railway Company (BNSF). The bridge is located on BNSF's right-of-way which runs through the Isleta Pueblo. The Defendants in this case are not members of the Isleta Pueblo.

BNSF's predecessor received a right-of-way deed from the Isleta Pueblo on July 2, 1928 as provided by the Pueblo Lands Act of 1924, 46 Stat. 636, §17. In accordance with the Pueblo Lands Act, the United States Secretary of the Interior and the Pueblo Lands Board approved the deed on August 17, 1928. BNSF has not leased the right-of-way to the Isleta Pueblo or any tribal member.

B. Discussion

To establish entitlement to a preliminary injunction, the moving party must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the

2

public interest." *Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

1. Whether the Defendants Have Shown a Substantial Likelihood of Prevailing on the Merits

In general, "a tribe has no civil regulatory authority over non-tribal members for activities on reservation land alienated to non-Indians." *Burlington Northern R. Co. v. Red Wolf*, 196 F.3d 1059, 1062 (9th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000)(citing *Montana v. United States*, 450 U.S. 544, 564-65) (1981)). "[A] right-of-way granted to a railroad by Congress over reservation land is 'equivalent for nonmember governance purposes, to alienated, non-Indian land.'" *Id*. at 1063 (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997)). In this case, BNSF's predecessor received its right-of-way deed as authorized by the Pueblo Lands Act, a federal act of Congress. Moreover, the right-of-way deed unconditionally conveyed to BNSF's predecessor the "right of way for railroad and transportation purposes...." *See id.* (railroad right-of-way is considered alienated, non-Indian land if the tribe did not reserve power to exclude the railroad from the reservation or to exercise control over the right-of-way). BNSF's right-of-way is, therefore, considered alienated, non-Indian land. Accordingly, this case is not subject to tribal court jurisdiction.

There are, however, two exceptions to the general rule "restricting tribal jurisdiction over non-tribal members for activities on reservation land alienated to non-Indians...." *Id.* at 1064.

> [First, a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. [Second, a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

3

*Montana*, 450 U.S. at 565-66, *quoted in Red Wolf*, 196 F.3d at 1064. In the context of a right-of-way, the right-of-way deed transfers a property interest which "does not create a continuing consensual relationship between a tribe and the grantee." *Red Wolf*, 196 F.3d at 1064. Consequently, the first exception does not apply in this case. Moreover, the second exception simply does not apply when a railroad company has a right-of-way running through a reservation. *See id*. at 1064-65 (the "second exception 'does not entitle the tribe to complain or obtain relief against every use of fee land that has some adverse effect on the tribe,'" quoting *Brendale v. Confederate Tribes and Bands of the Yakima Indian Nation*, 492 U.S. 408, 431 (1989)). In sum, the Defendants are likely to succeed on the merits of their jurisdictional challenge.

    2. Whether Irreparable Harm Will Occur

The Defendants argue that they will suffer from irreparable harm if they are forced to expend unnecessary time, money, and effort litigating in a court without jurisdiction over the case. The Defendants also argue that they will risk having inconsistent binding judgments from two different courts if a preliminary injunction is not issued. These arguments are sufficient to show that the Defendants will suffer irreparable harm if the Plaintiffs are not enjoined from proceeding in tribal court. *See Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989); *Kerr-McGee Corp.*, 88 F.Supp.2d at 1233.

    3. Whether the Threatened Injury Outweighs the Harm that the Preliminary Injunction May Cause the Opposing Party

The Plaintiffs allege that they will suffer irreparable injury if they are not allowed to explore the jurisdictional issue before tribal court. This bald, unsupported allegation fails to demonstrate that the threatened injury to Defendants does not outweigh the harm that a

preliminary injunction may cause the Plaintiffs. The Defendants have shown that they would suffer more harm from litigating in tribal court than the Plaintiffs would suffer from in litigating in federal court only. *See* discussion of irreparable harm, *supra*.

    4. Whether a Preliminary Injunction Would Adversely Affect the Public Interest

"It is in the public interest to ... avoid the 'duplicative determinations' and inefficiencies associated with concurrent jurisdiction...." *Kerr-McGee Corp.*, 88 F.Supp.2d at 1233. In addition, even if there is no tribal jurisdiction, the Plaintiffs still have a forum in federal court in which to present their claims. *See Red Wolf*, 196 F.3d at 1065. A preliminary injunction would not adversely affect the public interest. Since the Defendants have met the four requirements necessary to obtain a preliminary injunction, a preliminary injunction will issue as well as an order to show cause.

    IT IS ORDERED that:

    1. a hearing on the Defendants' Application for Temporary Restraining Order and Preliminary Injunction (Doc. No. 8) is unnecessary and will not be set;

    2. Defendants' Application for Temporary Restraining Order and Preliminary Injunction (Doc. No. 8) is granted;

    3. a preliminary injunction enjoining the Plaintiffs from further pursuing their claims in the Isleta Tribal Court will be issued; and

    4. Plaintiff will be ordered to show cause why the preliminary injunction should not be made permanent.

                                      _____
                                      CHIEF UNITED STATES DISTRICT JUDGE