IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EUNICE MAE VERONICA CHIWEWE, as Personal
Representative in the Estate of ROXANNE CRYSTAL
JIRON, a deceased minor, EUNICE MAE VERONICA
CHIWEWE, as Personal Representative in the Estate of
IVAN B. CHIWEWE, deceased, EUNICE MAE VERONICA
CHIWEWE, individually, JUAN CRESCENCIO JIRON,
ELI CHIWEWE, and CALVIN R. LUCERO,

      Plaintiffs,

vs.                                                                                                Civ. No. 02-0397 JP/LFG-ACE

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,
AMTRAK, ROBERT H. WILBUR, DAVID
SCHUTE, A. NABE, WYMAN L. SCHENK,
JOHN DOE 1, and JOHN DOE 2,

      Defendants.

MEMORANDUM OPINION AND ORDER

      On August 15, 2002, the Court entered a Preliminary Injunction and Order to Show Cause (Doc. No. 30), which enjoined the Plaintiffs from further litigating a parallel case filed in the Isleta Tribal Court. The Court based the Preliminary Injunction and Order to Show Cause on its finding that the Tribal Court lacks jurisdiction to hear the case filed in the Tribal Court.

      The Preliminary Injunction and Order to Show Cause also ordered the Plaintiffs to show cause why the preliminary injunction should not become a permanent injunction. The parties have now completed their briefing in response to the order to show cause. In addition to arguing that the preliminary injunction should not be made permanent, the Plaintiffs ask the Court to award them attorneys' fees and costs. Having reviewed the briefs and relevant law, the Court finds that the preliminary injunction should be made permanent and that the Plaintiffs' request for an award

of attorneys' fees and costs should be denied.

A.  Background

This lawsuit arises from the death of Roxanne Crystal Jiron.  On March 14, 1999, an Amtrak train hit and killed Ms. Jiron while she was on a railroad bridge owned by Defendant Burlington Northern and Santa Fe Railway Company (BNSF).  The bridge is located within BNSF's right-of-way which runs through the Isleta Pueblo.  The Plaintiffs are members of the Isleta Pueblo.  Defendants are not members of the Isleta Pueblo.

BNSF's predecessor received a right-of-way deed from the Isleta Pueblo on July 2, 1928 as provided by the Pueblo Lands Act of 1924, 46 Stat. 636, §17.  In accordance with the Pueblo Lands Act, the United States Secretary of the Interior and the Pueblo Lands Board approved the deed on August 17, 1928.  BNSF has not leased the right-of-way to the Isleta Pueblo or to any tribal member.

B. Discussion

The standard for determining whether a permanent injunction should issue is essentially the same as the standard for a preliminary injunction, except that the Court determines the movant's actual success on the merits rather than the movant's likelihood of success on the merits. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987)(citation omitted).  In addition to showing the movant's success on the merits, the movant must establish that:  (1) he or she will suffer irreparable injury unless an injunction is issued; (2) his or her threatened injury outweighs any harm the proposed injunction may cause to the opposing party; and (3) an injunction would not be adverse to the public interest.  *See, e.g., Chemical Weapons Working Group, Inc. (CWWG) v. U. S. Dept. of the Army*, 111 F.3d 1485, 1489 (10th Cir. 1997).

The Plaintiffs argue that the Defendants would not be successful on the merits, because the Isleta Tribal Court has jurisdiction in the tribal case. In addition, the Plaintiffs argue that the Court should abstain from hearing this case until the Tribal Court has ruled on the issue of its jurisdiction.

    1. Abstention

Initially, the Plaintiffs contend that as a matter of comity this Court should abstain from ruling on whether the Tribal Court has jurisdiction in the tribal case and should instead allow the Tribal Court to decide the jurisdiction issue. "As a general rule, a federal district court should abstain from asserting federal question jurisdiction over claims that are identical to claims pending in tribal court until the tribal court has had a full opportunity to consider the basis for its own jurisdiction." *Burlington Northern R. Co. v. Red Wolf*, 196 F.3d 1059, 1065 (9th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000)(citing *Strate v. A-1 Contractors*, 520 U.S. 438, 449-50 (1997); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987)). There are, however, five exceptions to this general rule: 1) when "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith," *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.21 (1985); (2) when "the action is patently violative of express jurisdictional prohibitions," *id*.; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction," *id*.; (4) "[w]hen ... it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by [the main or general rule established in *Montana v. United States,*450 U.S. 544 (1981)]," *Strate*, 520 U.S. at 459 n.14; and (5) when the Tribal Court clearly lacks jurisdiction, *Nevada v. Hicks*, 533 U.S. 353, 369 (2001). The Isleta Tribal Court lacks jurisdiction under the *Montana* general rule

3

as interpreted and applied by the United States Supreme Court in *Strate* and by the Ninth Circuit Court of Appeals in *Red Wolf*.[1]  Accordingly, the fourth and fifth exceptions to the tribal exhaustion rule are applicable and abstention would be inappropriate.

    2.   Determining Tribal Jurisdiction Under *Montana*

The Supreme Court in *Montana*

> described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions:  The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

*Strate*, 520 U.S. at 446.  The Plaintiffs argue that the first exception under *Montana* applies to this case because the Isleta Tribe and BNSF's predecessor entered into a private consensual contract when the railroad right-of-way was originally created in 1928.  The Plaintiffs attempt to distinguish *Strate* and *Red Wolf*, in which the Courts found that the first *Montana* exception did not apply, on the ground that the rights-of-way in those cases had been granted by Congress, unlike the railroad right-of-way in this case.

In determining that the first *Montana* exception did not apply, the Court of Appeals in *Red Wolf* held that "[a] right-of-way created by congressional grant is a transfer of a property interest that does not create a <u>continuing</u> consensual relationship between a tribe and the grantee."  196 F.3d at 1064 (emphasis added).  In this case, Congress did not directly grant the right-of-way to

---

[1]In applying the *Montana* principles regarding Tribal Court jurisdiction over non-tribal members, the Supreme Court in *Strate* held that there was no tribal jurisdiction when an automobile accident involving non-tribal members occurred on a state highway crossing an Indian reservation and Congress had granted the state a highway right-of-way through the reservation. In applying *Montana* and *Strate*, the Court of Appeals in *Redwolf* held that there was no tribal jurisdiction when a train killed two tribal members on an Indian reservation and Congress had granted the railroad a right-of-way through the reservation.

BNSF's predecessor. Congress, however, legislatively mandated a specific procedure for creating a right-of-way through Pueblo lands. That statutory procedure, like a direct Congressional grant, also authorized the unconditional transfer of Indian property interests to non-Indians. An unconditional transfer of Indian property interests, whether by a direct Congressional grant or through the procedure established in the Pueblo Lands Act, does not create a "continuing" consensual relationship between the tribe and the owner of the right-of-way. There is no relevant distinction between how the right-of-way came into existence in this case and how the rights-of-way came into existence in *Strate* and *Red Wolf*. Consequently, under *Red Wolf* specifically, the right-of-way deed in this case, granted in accordance with the provisions of the Pueblo Lands Act, does not result in continuing consensual relationship between BNSF and the Isleta Pueblo.[2] The first *Montana* exception does not apply.

3. Applying *Strate*

The Plaintiffs assert that *Strate* is inapposite to this case because the right-of-way in that case was controlled by the state and the tort that occurred within the state's right-of-way involved nonmembers of the tribe. Contrary to the Plaintiffs' interpretation, in *Strate* the Supreme Court did not give undue emphasis to the fact that the state owned the right-of-way. In determining whether *Montana's* general rule should apply, the Supreme Court in *Strate* had to decide if the right-of-way should be considered land alienated to non-Indians. To make that determination, the Supreme Court discussed whether the tribe retained a gatekeeping right to the land by being able

---

[2] The Plaintiffs argue in their reply brief that *Atkinson Trading Co., Inc. v. Shirley*, 210 F.3d 1247 (10th Cir. 2000) supports a finding that the first *Montana* exception is applicable to this case. Unfortunately for the Plaintiffs, *Atkinson Trading Co., Inc.* was reversed by the United States Supreme Court, 532 U.S. 645 (2001).

to assert dominion or control over the right-of-way, including the right to occupy the right-of-way and exclude people from the right-of-way.  520 U.S. at 455-56.

The Plaintiffs correctly note that unlike this case the injured parties in *Strate* were not tribal members.  In *Strate* the Supreme Court, however, did discuss the interest of tribal members in exercising tribal jurisdiction over nonmembers when it addressed the second exception to *Montana's* general rule.  The Supreme Court stated:  "Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members.  But if *Montana's* second exception requires no more, the exception would severely shrink the rule."  520 U.S. at 457-58.

Furthermore, like the Plaintiffs in this case, the plaintiffs in *Red Wolf* were tribal members. In applying *Strate's* analysis of *Montana's* second exception, the court in *Red Wolf* quoted *Wilson v. Marchington*, 127 F.3d 805, 815 (9th Cir. 1997) as follows: "'[i]f the possibility of injuring multiple tribal members does not satisfy the second *Montana* exception under *Strate*, then, perforce, [a plaintiff's] status as a tribal member alone cannot.'"  196 F.3d at 1065.  The Court of Appeals in *Red Wolf* did not find that the second *Montana* exception applied in that case.  *Id*.  In sum, *Montana*, *Strate*, and *Red Wolf* direct a conclusion that the *Montana* general rule is applicable and that the Isleta Tribal Court does not have jurisdiction in the tribal case.[3]

---

[3]The Plaintiffs also assert for the first time in their reply brief that the right-of-way deed in this case did not waive tribal jurisdiction.  The right-of-way deed, in fact, did not reserve tribal jurisdiction.  As the Plaintiffs concede, the right-of-way is alienated non-Indian land. Consequently, the *Montana* general rule applies and the Plaintiffs' assertion that the right-of-way deed in this case did not waive tribal jurisdiction is immaterial.

4.  Indian Country

The Plaintiffs argue next that the Isleta Tribal Court has jurisdiction in this case because the BNSF right-of-way is defined as being included in Indian Country under 18 U.S.C. §1151. Section 1151 confers tribal jurisdiction over certain criminal acts occurring in Indian country. "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, *including rights-of-ways* running through the reservation." 18 U.S.C. §1151 (emphasis added). This provision has been applied to questions of civil jurisdiction as well. *See DeCoteau v. District County Court for Tenth Judicial Dist.*, 420 U.S. 425, 427 n.2 (1975). Section 1151, however, addresses only claims of statutorily conferred tribal power, "not an Indian tribe's inherent or retained sovereignty over nonmembers on non-Indian fee land." *Atkinson Trading Co., Inc. v. Shirley*, 532 U.S. 645, 653-54 n.5 (2001). Section 1151 is inapplicable to this case.

5.  Federal Preemption

The Plaintiffs also argue that the Defendants' federal preemption issue should be heard in Tribal Court. The Defendants had argued in response to the Plaintiffs' motion to remand that the Plaintiffs' claims are preempted by federal law which sets the maximum allowable speed of trains. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 676 (1993). The Plaintiffs replied to that response by indicating that they are not alleging excessive speed by the Amtrak train. Accordingly, the Plaintiffs' assertion that the federal preemption issue should be heard in tribal

7

court is moot.[4]

      6.  Defendant Amtrak

The Plaintiffs apparently argue that Defendant Amtrak can be subject to suit in Tribal Court because it is not a federal agency or establishment under its authorizing statute, 45 U.S.C. §541.  Section 541 was, however, repealed in 1994, 108 Stat. 1379.  Moreover, this Court has already held that there is federal question jurisdiction over the claims against Defendant Amtrak.  Memorandum Opinion and Order (Doc. No. 31), filed Aug. 21, 2002.

      7.  State Jurisdiction

Finally, the Plaintiffs argue that this lawsuit could be tried in state court.  Whether this lawsuit could be tried in state court is irrelevant to the issue of whether a permanent injunction should ensue which enjoins the Plaintiffs from pursuing their Tribal Court case.  In addition, this Court denied the Plaintiffs' motion to remand and ruled that there is federal jurisdiction.  *Id*.

C.  Conclusion

The Plaintiffs have failed to show cause why the preliminary injunction should not be made permanent.  It is clear that the Isleta Tribal Court does not have jurisdiction over the tribal lawsuit.  The Court, therefore, is not required to abstain from hearing this lawsuit and the tribal exhaustion rule is inapplicable.  Accordingly, the Defendants succeed on the merits of their tribal

---

[4]The Plaintiffs cite *El Paso Natural Gas Co. v. Neztsosie*, 136 F.3d 610 (9th Cir. 1998) for the proposition that if a federal statute like the train speed provision does not prohibit tribal jurisdiction of claims arising under it, the tribal exhaustion rule applies.  The Supreme Court, however, reversed *El Paso Natural Gas.*  526 U.S. 473 (1999).  Nonetheless, *El Paso Natural Gas* is readily distinguishable from this case because it involved the Price-Anderson Act.  *Id*. at 484-85.  In fact, the Supreme Court held that "the comity rationale for tribal exhaustion normally appropriate to a tribal court's determination of its jurisdiction stops short of the Price-Anderson Act...."  *Id*. at 487.

8

jurisdiction argument. Furthermore, the Plaintiffs do not contest that the Defendants will suffer irreparable injury unless a permanent injunction is issued; that the Defendants' threatened injury outweighs any harm the proposed permanent injunction may cause to the Plaintiffs; and that a permanent injunction would not be adverse to the public interest.[5] Since the four requirements necessary to obtain a permanent injunction have been met, a permanent injunction will issue. The Plaintiffs' request for an award of attorneys' fees and costs will be denied.

IT IS ORDERED that:

1. a permanent injunction enjoining the Plaintiffs from pursuing their claims in the Isleta Tribal Court will be issued; and

2. the Plaintiffs' request for an award of attorneys' fees and costs is denied.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The Plaintiffs argue in their reply brief that although they have not addressed these three factors for establishing a permanent injunction, they have not conceded the establishment of those factors. D.N.M. LR-Cv 7.1(b) states that a failure to respond to a motion constitutes consent to grant the motion. D.N.M. LR-Cv 7.1(b), therefore, dictates that the Plaintiffs have consented to the establishment of those three permanent injunction factors.